UNITED STATES DISTRICT COURT
DISTRICT COURT OF PUERTO RICO

| | |
|---|---|
| BANCRÉDITO HOLDING CORPORATION<br><br>Plaintiff,<br><br>v.<br><br>NATALIA I. ZEQUEIRA DIAZ, in her official capacity as Commissioner of the Office of the Commissioner of Financial Institutions of Puerto Rico<br><br>and<br><br>OFFICE OF THE COMMISSIONER OF FINANCIAL INSTITUTIONS OF PUERTO RICO<br><br>Defendants. | CIVIL NO.<br><br>Civil Rights, 42 U.S.C. §1983 |

## VERIFIED COMPLAINT FOR DECLARATORY, INJUCTIVE, AND OTHER RELIEF

TO THE HONORABLE COURT:

COMES NOW Bancrédito Holding Corporation ("BHC" or the "Shareholder"), through counsel, and very respectfully alleges and prays as follows:

### I. NATURE OF THE ACTION, JURISDICTION AND VENUE

1. This is an action to hold unlawful and set aside certain agency actions of the Office of the Commissioner of Financial Institutions[1] ("OCIF") that, in effect, deprive BHC of its constitutional rights as the *sole* shareholder of Bancrédito International Bank and Trust Corporation (the "Bank"). The right to elect the Board of Directors is one of the fundamental rights

---
[1] In Spanish, Oficina del Comisionado de Instituciones Financieras.

1

of a shareholder. OCIF, without jurisdiction, issued an arbitrary and illegal order, restraining the Shareholder's ability to remove and appoint new directors, in violation of Puerto Rico law, and the Fifth and Fourteenth Amendments to the U.S. Constitution.

2. There is subject matter jurisdiction over the claims pursuant to 38 U.S.C. § 1331, which provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." BHC's claims assert constitutional violations, which arise under the Fifth and Fourteenth Amendments to the United States Constitution.

3. In addition, BHC has asserted claims arising under 42 U.S.C. § 1983, which provides that "[e]very person who, under color of any statute . . . of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . ." Thus, the district court also has jurisdiction under 28 U.S.C. §1343.

4. Venue is proper in this district under 28 U.S.C. § 1391, which provides for venue in a "judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located."

## II. THE PARTIES

5. Plaintiff BHC is a corporation duly registered under the laws of the State of New York with its principal offices located at 575 5th Avenue, Suite 17-143, New York, New York, 10017. BHC is the sole shareholder of the Bank.

6. Defendant Natalia I. Zequeira Díaz is the Commissioner for Financial Institutions and is domiciled in Guaynabo, Puerto Rico.

7.      Defendant the Office of the Commissioner of Financial Institutions ("OCIF") is a Puerto Rico government entity with the mission to regulate and oversee Puerto Rico's financial system and is domiciled in San Juan, Puerto Rico.

### III.    RELEVANT FACTS COMMON TO ALL CLAIMS

8.      Plaintiff realleges and incorporates the allegations set forth in paragraphs 1-7, inclusive, and incorporates the herein by reference.

a. *Voluntary Liquidation Plan*

9.      On or about August 9, 2022, BHC – along with the Bank and OCIF – jointly entered into a plan of liquidation (the "Liquidation Plan"). Driven Administrative Services LLC was appointed as the administrator of the Bank for the duration of the liquidation process. (Ex.1).

10.     The Liquidation Plan established a priority of payments of the Bank's obligations. Non-related depositors of the Bank had first priority under the Liquidation Plan, with the establishment of cash reserves, payment of expenses, and the payment of related depositors taking lower priority. The Liquidation Plan did not include a requirement that the Bank's funds be deposited into specific accounts or that the Bank's funds or assets be located in the United States. *Id.*

11.     The Liquidation Plan set a 90-day deadline for BHC's cessation of business, aside from winding up its business and affairs, including the distribution of its assets in accordance with the Plan. (Ex.1 at 3). The Plan created a 6-month liquidation period, at the end of which all liquidation distributions are to be concluded – the end of this period is set for early February, less than one-and-a-half months from the date of this motion.

12. Section 12 of the Liquidation Plan states that:

> "(A) *As of the Effective Date, the Shareholder shall appoint as directors of the Corporation*, Gregorio D'Andrea, Juan Carlos Eyherabide, and Ramón Ponte, and such directors shall appoint Gregorio D'Andrea as President and Chief Executive Officer, Ana Faría as Secretary and Chief Legal Counsel, Denisse Aracena as Vice President and Chief Compliance Officer, and Jennifer López as Chief Financial Officer and Treasurer." (Emphasis ours). There were no limitations or agreements as to removal of directors or future appointments. *Id.*

13. The Liquidation Plan did not divest BHC of its right to remove and appoint directors of the Bank – rights that are based upon provisions of Article 4.01(k) of the Puerto Rico General Corporation Law and Subsection (4) of Article Eight of the Bank's Certificate of Incorporation.

  b. *OCIF requests the Shareholder's intervention*

14. On September 20, 2022, OCIF sent a letter to the Shareholder's counsel expressly requesting that the Shareholder and its ultimate beneficial owner, Mr. Julio Herrera Velutini ("Herrera"), assist in the liquidation process, as the process was stalled due to the instructions of certain financial institutions not being executed. (Ex. 2).

15. In compliance with the request, the Shareholder, through counsel, provided material assistance in expediting and undertaking the Liquidation Plan. (Ex. 3).

16. Pursuant to the instructions of the OCIF, the Shareholder engaged in conversations with Berkeley Bank & Trust Limited ("Berkeley"), with whom it had entered into an Asset Purchase Agreement prior to the Liquidation Plan, to facilitate the payments to the non-related depositors.

17. The Administrator then entered into conversations with Berkeley, which agreed to receive transfers in order to fund the Bank's account in the Federal Reserve Bank of New York

(the "Fed Account"), to pay all of the non-related depositors. Berkeley was not lending these funds to the Bank but agreed to make the transfer to the Fed Account in exchange for the Bank authorizing the transfer of the Bank's funds that it held in another account. The Bank thereby agreed to use Berkeley as a "compensating bank" in order to allow the liquidation to go forward and for non-related depositors to be made whole.

18. Berkeley transferred amounts to the Fed Account for the payment of non-related depositors. Yet, the Bank failed to give the agreed upon instructions to transfer funds from the Bank's account to Berkley, and, thereby, caused a default under the agreement with the Bank.

19. The Shareholder only learned that such a default had occurred, as OCIF placed a hold on the transfers until all the funds of the Bank were transferred to the Fed Account and the Bank of New York Mellon, which are accounts in the United States. For the avoidance of doubt, the Liquidation Plan did not require that assets be transferred to the United States. The Bank neither sought the Shareholder's consent for the amendment nor notified BHC of this effective breach of the Liquidation Plan.

20. Upon investigation by BHC, both the Administrator and the Bank's counsel confirmed that OCIF issued such instructions in contravention of the Liquidation Plan.

21. As a direct result of OCIF's unilateral and contradictory orders, the Fed Account could not receive sufficient funds to pay all non-related depositors, since Berkeley could not continue to fund the Fed Account while the Bank continued in default of its obligation to repay Berkeley.



22. The Administrator would not authorize transfers to Berkeley without the authorization of OCIF given the "hold" order issued by OCIF in connection with the execution of the Liquidation Plan. This impasse was created by OCIF and not by the Shareholder.

23. At the end of September, the impasse was momentarily alleviated as OCIF lifted its "hold" order to pay Berkeley, and the Fed Account was funded to pay most of the Bank's depositors as per the terms of the Liquidation Plan.

24. Yet, on or about November 10, 2022, the Shareholder became aware that the Administrator was again being required to transfer clients' assets to the Bank of New York Mellon first and then to the client, in contravention to the terms of the Liquidation Plan.

25. During those conversations with OCIF and the Bank's counsel, the Shareholder learned that certain members of the Bank's Board of Directors were now giving the "hold" orders to the Administrator because they were being pressured by federal government authorities to do so, intentionally delaying the Liquidation Plan.

26. The Shareholder has also asked to participate in negotiations with the federal authorities to finalize the liquidation of the Bank. Upon information and belief, the Bank's Board of Directors is refusing to allow such participation.

27. Though the Bank had been able to move the liquidation forward using Berkeley as the compensating Bank, the liability of the Bank with Berkely has grown to approximately $30 million dollars that the Bank currently owes to Berkeley. The aforementioned impasse, coupled with the Bank's and OCIF's reticence to follow the Liquidation Plan by holding payments owed to Berkeley, will result in legal actions against the Bank and the Shareholder, despite the Bank having the funds to finish the liquidation as per the terms of the Liquidation Plan.



28. Nonetheless, and despite these concerns being communicated repeatedly to OCIF and the Bank, both OCIF and the Bank's Board of Directors had refused to culminate the Liquidation Plan.

c. *BHC Executed the Written Consent*

29. On or about December 20, 2022, in response to the dilatory behavior of the then-Directors of the Bank (and OCIF), BHC executed a written consent removing Messrs. Juan Carlos Eyherabide and Ramon Ponte from the board of directors (the "Written Consent"). In the Written Consent, BHC explained that these members of the board:

> are refusing or otherwise failing to discharge their duties with respect to the Plan of Liquidation, and have taken actions that are contrary to the terms of the Plan of Liquidation agreed upon by the Corporation, the Sole Shareholder, and OCIF, due to external influences and/or conflicts of interest.

Messrs. Eyherabide and Ponte were replaced by Messrs. Richard Lewis and Andrew Childe, with Mr. Lewis also appointed as Chairperson of the Board. The new directors have expertise in liquidation matters. (Ex. 4).

d. *OCIF Issues Order Blocking the Written Consent*

30. On December 20, 2022, the then contemplated Written Consent was communicated to OCIF through BHC's counsel. (Ex. 5).

31. On December 21, 2022, OCIF responded by issuing a Cease-and-Desist-Order (the "Order"), which purported to direct BHC from taking any action relating to the Liquidation Plan and/or the Board of Directors of the Bank. (Ex. 6).

32. OCIF's stated bases for the Order was that "[t]here being no imputation of the Shareholder with respect to the enforceability of the Administrator, which OCIF has closely monitored, it is appropriate that the Liquidation Plan continue its course, as contemplated,

including with the Board of Directors whose composition was expressly agreed in the Liquidation Plan and endorsed by all signatories." (*Id.*).

33. OCIF cited the Liquidation Plan, Section 12, as the only support for their Order. And yet, nothing in Section 12 empowers OCIF to invalidate a lawfully exercised right of the Shareholder under Puerto Rico law. (*Id.*)

34. Separately, and contrary to the baseless assertions of OCIF in the Order, the undertakings of the Written Consent do not contemplate or otherwise direct any changes to the Administrator of the Liquidation Plan.

35. OCIF issued the order without any prior notice to BHC (*Id.*). OCIF could have reasonably provided a hearing before issuing its Order but chose not to do so.

36. Moreover, the OCIF post deprivation procedures provide no meaningful remedy since it results in excessive delays that will cause irreparable damages to BHC.

37. OCIF will not consider any remedy promptly because it is on holiday break until January 9, 2022 (Ex. 6), and it may take up to 90 days, with a possible 30-day extension, for OCIF to issues its decision on a reconsideration request after a hearing is held, past the deadlines set in the Liquidation Plan. *See* Puerto Rico Uniform Administrative Procedure Act (known as "LPAU" per its Spanish acronym), Section 3.15, 3 PR Laws Ann. § 9655.

### IV.     REQUEST FOR DECLARATORY JUDGMENT

38. Plaintiff realleges and incorporates the allegations set forth in paragraphs 1-37, inclusive, and incorporates them herein by reference.

39. The Declaratory Judgment Act provides, in its pertinent part, that "[i]n a case within its jurisdiction … any court of the United States, upon filing of an appropriate pleading, may

declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201.

40. A declaratory judgment action is proper when the judgment will (a) serve a useful purpose in clarifying and settling legal relations at issue; and (b) provide relief from the uncertainty and controversy between the parties. *Aetna Casualty & Surety Co. v. Sunshine Corp.*, 74 F.3d 685, 687 (6th Cir. 1996)

41. The OCIF Order violates Puerto Rico law. The Liquidation Plan does not confer jurisdiction to OCIF to restrict the valid exercise of the Shareholder's rights pursuant to Article 4.01(k) of the Puerto Rico General Corporation Law and subsection (4) of Article EIGHTH of the Certificate of Incorporation of the Bank. In light of the events described above, there is a justiciable controversy regarding OCIF's breach of Puerto Rico law and violation of BHC's constitutional rights.

## V. PLAINTIFF'S CAUSES OF ACTION

### FIRST: VIOLATION OF FEDERAL LAW, 42 U.S.C. § 1983
(Against All Defendants)

42. Plaintiff realleges and incorporates the allegations set forth in paragraphs 1-41, inclusive, and incorporates them herein by reference.

43. 42 U.S.C. § 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom or usage, or any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress …"

44. OCIF and the OCIF Commissioner Natalia I. Zequeira Díaz, acting under color of state law, unlawfully issued the Order, abridging the Shareholder's ownership rights.

45. Moreover, Defendants unlawfully deprived BHC of its property without due process of law in violation of the Fifth and Fourteenth Amendments to the Constitution of the United States.

### SECOND: CONSTITUTIONAL VIOLATIONS (FIFTH AND FOURTEENTH AMENDMENTS)
### (Against All Defendants)

46. Plaintiff realleges and incorporates the allegations set forth in paragraphs 1-37 inclusive and incorporates them herein by reference.

47. The Fifth Amendment to the United States Constitution, which is applicable to the States through the Fourteenth Amendment, provides that no person shall "be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation. [.]" U.S. Const. amend. V.

48. BHC has a significant property interest in the Bank by virtue of its role as sole shareholder.

49. The OCIF Order has deprived BHC of its ownership by blocking BHC from installing its lawfully chosen board members with the expertise to effectuate the Liquidation Plan. Such an extreme restriction constitutes a regulatory taking for which "justice and fairness" require that compensation be given.

50. Moreover, the Fourteenth Amendment to the United States Constitution provides that "[n]o State shall make or enforce any law which shall abridge the privileges or immunities of

citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law . . ."

51. A procedural due process violation occurs when the state interferes with a liberty or property interest without constitutionally sufficient procedures. *Amsden v. Moran*, 904 F.2d 748, 753 (1st Cir. 1990).

52. OCIF deprived BHC of its fundamental property interest with no prior notice and the post-deprivation lengthy review process provides no meaningful redress, since the significant delay will cause BHC to suffer irreparable harm. Additionally, OCIF has also violated BHC's substantive due process rights. A violation of substantive due process is established where the state action at issue is arbitrary or capricious, run counter to "the concept of ordered liberty" or be "shocking or violative of universal standards of decency." *Amsden v. Moran*, 904 F.2d 748, 753–54 (1st Cir. 1990) (citations omitted).

53. The reasoning provided by OCIF for issuing the Order was arbitrary and capricious, bears no relationship to the Liquidation Plan, and shocks the conscience, thus violating BHC's substantive due process rights under the Fourteenth Amendment to the United States Constitution.

### THIRD: INJUNCTIVE RELIEF
### (Against All Defendants)

54. Plaintiff realleges and incorporates the allegations set forth in paragraphs 1-37, inclusive, and incorporate herein by reference.

55. As further set in its Motion for Temporary Restraining Order, and Order to Show Cause Why a Preliminary Injunction Should not be issued, Plaintiff seeks a restraining order to enjoin the OCIF Order, and to enforce BHC's appointment of the two new directors. BHC further seeks the issuance of an order requiring OCIF to show cause why, pending, final resolutions of



this action, this Honorable Court should not issue a preliminary injunction under Rule 65(a) of the Federal Rules of Civil Procedure and pursuant to the same conditions contained in the temporary restraining order.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment in its favor and against OCIF and seeks the following relief from this Court:

(a) a declaratory judgment that the Defendants' Complaint and Cease and Desist Order is unlawful, *ultra vires* or invalid and was issued in contravention of the Fifth and Fourteenth Amendment;

(b) a declaratory judgment that the Written Consent was a lawful undertaking of the Shareholder's rights;

(c) a temporary restraining order enjoining Defendants and all others acting on their behalf or in concert with them – including but not necessarily limited to Bancrédito International Bank & Trust Corporation – from enforcing the Complaint and Cease and Desist Order restricting the Shareholder's rights; and an order to show cause why, pending, final resolution of this action, this Honorable Court should not issue a preliminary injunction under Rule 65(a) of the Federal Rules of Civil Procedure and pursuant to the same conditions contained in the temporary restraining order;

(d) a permanent injunction in accordance with the terms set forth above,

(e) an Order awarding Plaintiff such other and further relief as the Court may deem just and proper.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 27th day of December, 2022.

*Counsel For Bancredito Holding Corporation*

**The LS Law Firm**
*(Pro-Hac Vice Pending)*
One Biscayne Tower, Suite 2530
2 South Biscayne Blvd.
Miami, Florida 33131
Telephone: (305) 503-5503
Facsimile: (305) 503-6801

*/s/ Lilly Ann Sanchez*
Lilly Ann Sanchez, Esq.
Fla. Bar No. 195677
Email: lsanchez@thelsfirm.com

**DLA Piper (Puerto Rico) LLC**
500 Calle de la Tanca Ste. 401
San Juan, PR 00901-1969
Tel. 787 281-8100

*/s/ Jose Alberto Sosa-Llorens*
Jose Alberto Sosa-Llorens
USDC-PR No. 208602
Email: Jose.Sosa@us.dlapiper.com

*/s/ Sonia Torres-Pabón*
Sonia Torres-Pabón
USDCPR No 209310
Email: Sonia.torres@us.dlapiper.com

**KASOWITZ BENSON TORRES LLP**
*(Pro-Hac Vice Pending)*
1633 Broadway
New York, New York 10019-6799
Telephone: (212) 506-1783

*/s/Jason M. Short*
Jason M. Short
N.Y. Bar No. 5140355
Email: JShort@Kasowitz.com

*/s/ Robin Rathnell*
Robin Rathnell
N.Y. Bar No. 5182001
Email: RRathmell@Kasowitz.com

*Albert Shemmy Mishaan*
Albert Shemmy Mishaan
N.Y. Bar No. 2701845
Email: AMishaan@Kasowitz.com

## VERIFICATION

I Luis Augusto Zapata of legal age, married, resident of Miami, Florida, and President Chief Executive Officer of BHC do hereby attest that I have read the above information, examined the exhibits attached to the Verified Complaint, and the above is true to the best of my knowledge. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed in Miami, Florida on December 27, 2022.

_____
Luis Augusto Zapata