**Exhibit 1**

## PLAN OF LIQUIDATION AND DISSOLUTION OF
## BANCREDITO INTERNATIONAL BANK & TRUST CORPORATION

**WHEREAS**, Bancrédito International Bank & Trust Corporation (the "Corporation"), is a corporation organized under the laws of the Commonwealth of Puerto Rico; and

**WHEREAS**, the Corporation has a license under Act No. 52 of August 11, 1989, as amended, better known as the Puerto Rico International Banking Center Regulatory Act (the "Act 52"), as an international banking entity issued by the Office of the Commissioner of Financial Institutions of Puerto Rico (the "OCFI"); and

**WHEREAS**, the Board of Directors of the Corporation (the "Board") has approved and determined that this Plan of Liquidation and Dissolution of the Corporation (this "Plan") is advisable and in the best interests of the shareholder of the Corporation;

**WHEREAS**, the Board has directed that this Plan be submitted to its sole shareholder, Bancredito Holding Corporation (the "Shareholder"), owner of all the outstanding voting shares of the Corporation's common stock, for its approval in accordance with the requirements of the Puerto Rico General Corporation Law of 2009 (the "PRGCL"), the Internal Revenue Code for the New Puerto Rico, as amended (the "Code"), and the Corporation's Articles of Incorporation and By-Laws; and

**WHEREAS**, upon approval of this Plan by the Shareholder and OCFI, the Corporation shall voluntarily dissolve and completely liquidate in accordance with the PRGCL and the Code, upon the terms and conditions set forth below;

**NOW, THEREFORE**, the Board hereby adopts and sets forth this Plan of Liquidation and Dissolution of the Corporation as follows:

1.      Definitions. As used herein, the following words and terms shall have the following meanings:



"**Administrator**" means Driven Administrative Services LLC, or any successor administrator appointed by the Board and approved by the Shareholder and the OCFI.

"**Business Day**" means any day of the year other than a Saturday, Sunday or a day on which banks in the Commonwealth of Puerto Rico are authorized or required by law, regulation or executive order to close.

"**Cash Reserve Account**" means a cash reserve established by the Administrator of the Corporation with sufficient funds in cash or readily available funds to pay ALL the Deposits.

"**Creditor**" means a person with whom the Corporation has an outstanding contractual

payment obligation, including but not limited to depositors, lenders, lessors, service providers and employees.

"**Department of State**" means the Department of State of the Commonwealth of Puerto Rico.

"**Deposits**" means liabilities of the Corporation in the form of demand deposits or time deposits but does not include trust or custody accounts held with the Corporation.

"**Depositors**" means a person that holds a Deposit in the Corporation.

"**Effective Date**" shall have the meaning ascribed to such term in Section 2 of this Plan.

"**Expenses of the Corporation**" means the following expenses of the Corporation: (i) payroll, (ii) operational expenses, including but not limited to leases, utilities, licensing of software; (iii) fees of advisors including but not limited to accountants, attorneys, auditors, management and compliance consultants; and (iv) fines, penalties and administrative penalties due to governmental authorities, including but not limited to the OCFI and the Financial Crimes Enforcement Network of the U.S. Department of the Treasury (FinCEN).

"**Inactive Accounts**" means Deposit accounts that have been inactive for the last twelve (12) months.

"**MOU**" means the Memorandum of Understanding entered into by and between the Corporation and the OCFI dated December 21, 2021 attached hereto as **Exhibit A**.

"**Liquidation Distribution**" means a distribution of assets or liabilities of the Corporation to the Shareholder pursuant to the terms of this Plan.

"**Liquidation Period**" means the period from and including the Effective Date to and including the date on which all Liquidation Distributions are concluded.

"**Look Back Review**" shall have the meaning ascribed to such term in Section 7 of this Plan.

"**Non-Related Person**" means a person that is not a Related Person.

 "**Obligations**" means any obligations or liabilities of the Corporation other than Deposits.

"**Related Person**" means the persons listed in **Exhibit B**.

2.      Effective Date of Plan. The Plan shall be and become effective on the date of approval of the Plan by the affirmative written consent of the Corporation's Shareholder and the OCFI (the "Effective Date"). The stock transfer books of the Corporation shall be closed on the Effective Date. This Plan shall not become effective until it has been approved by the affirmative consent or vote of the Shareholder and has been approved by the OCFI.

3.      Liquidation. The Corporation cannot estimate the specific time period the Liquidation Period will take, however, the Liquidation Period shall not to exceed six (6) months from the Effective Date.

4.      Cessation of Business. Within ninety (90) days of the Effective Date, the Corporation shall cease conducting any business activities, except for the purposes of winding up its business and affairs, marshalling and preserving the value of its assets, and shall distribute the Corporation's assets in accordance with the provisions of this Plan. Among the activities the Corporation is permitted to engage in as part of its winding up its business and affairs is the completion of the Look Back Review, including the filing of Suspicious Activity Reports (SARs) which may be required to be filed by the Corporation as a result of the Look Back Review.

5.      Liabilities; Payment to Creditors. (A) During the Liquidation Period, the Administrator shall cause the Corporation to pay, discharge, or otherwise provide for the payment or discharge of, any and all liabilities and obligations of the Corporation as follows:

First, within the first thirty (30) days after the Effective Date, the Administrator, on behalf of the Corporation, shall pay its Depositors that are not Related Persons that have a right to withdraw their Deposits in cash, either because they are demand deposits or time deposits that become due, upon request during the Liquidation Period.

Second, within the first sixty (60) days after the Effective Date, the Administrator, on behalf of the Corporation, shall transfer Deposits of Non-Related Persons to other depository institutions, whether they are Related Persons or not, pursuant to an asset purchase and assumption of liabilities agreement which transfer of deposits shall be conditioned upon receiving the consent of such depositors whose accounts are to be transferred, and in the event such consent is not obtained in a reasonable amount of time, not to exceed thirty (30) days, such deposits shall be paid to the Depositor in cash (wire transfer or check) by the Corporation. For the avoidance of doubt, the consent of Depositors can be obtained either as an affirmative consent or as a negative consent as long as it is not contrary to any applicable law or contractual agreement.

Third, within the first ninety (90) days after the Effective Date, the Administrator, on behalf of the Corporation, shall transfer Deposits of Related Persons to other depository institutions authorized within the jurisdiction to accept deposits and pursuant to an asset purchase and assumption of liabilities agreement which transfer of Deposits shall be conditioned upon receiving the consent of such Depositors whose accounts are to be transferred, and in the event such consent is not obtained in a reasonable amount of time, not to exceed thirty (30) days, such Deposits shall be paid in cash by the Corporation; *provided however*, that such transfer of Deposits of Related Persons shall only occur in the event that the Corporation has established and fully funded the Cash Reserve Account.



Fourth, during the Liquidation Period the Corporation shall pay its Obligations when due either per the terms of a contract or by requirement of law.

Fifth, during the Liquidation Period the Corporation may pay any Obligations before they are due to its Creditors; *provided however*, that such payments shall only occur in the

event that the Corporation has established and fully funded the Cash Reserve Account.

(B)   If the Corporation is unable to pay, discharge or otherwise provide for any liabilities of the Corporation during the Liquidation Period, the Corporation may, however, retain cash or cash equivalents in an amount that the Administrator estimates necessary to discharge any unpaid liabilities, Expenses of the Corporation and obligations on the Corporation's books as of the final Liquidation Distribution, payable for the period prior to the final Liquidation Distribution, and pay such contingent liabilities as the Directors and Officers shall reasonably deem to exist against the assets of the Corporation on the Corporation's books.

(C)   No distribution of assets of the Corporation shall be made to the Shareholder until all Deposits are either paid in cash or transferred to another depository institution with the consent of such Depositors as provided herein; *provided however*, that such distribution of assets to the Shareholder shall be allowed subject to Section 6(B) of the Plan and in the event that the Corporation has established and fully funded the Cash Reserve Account.

6.   <u>Disposal and or Sale of Assets</u>. (A) As of the Effective Date, the Corporation shall have the authority to either dispose or sell and liquidate its assets and engage in such other transactions as may be appropriate to its dissolution and liquidation, including, without limitation, obtaining all necessary approvals and authorizations from the OCFI and any other authority having jurisdiction over the Corporation.

(B)   Among the assets to be sold by the Corporation are investments and works of art of the Corporation which shall be sold in exchange for cash. The proceeds of the sale of such assets shall be used to: (i) pay Deposits; (ii) fund the Cash Reserve Account; and (iii) pay Expenses of the Corporation. Any proceeds from the sale of the assets referred to in this subsection (B) after the payments referred to in (i) to (iii) above shall be transferred to the Shareholder after a determination of no-objection from the OCFI to such transfer. The sale of investments and works of arts shall occur as the opportunities present themselves and shall be consummated prior to the las Liquidation Distribution; provided however, that the use of proceeds from those sale transactions shall be subject to the terms of the Plan.

(C)   Within the first fifteen (15) days from the Effective Date, the Administrator shall make a list of Inactive Accounts and within the first thirty (30) days from the Effective Date, the Administrator, on behalf of the Corporation, shall send a communication to the holders of such Inactive Accounts so identified to the last address on file with the Corporation indicating that the Corporation is undergoing a liquidation process and that they have a right to have their Deposits paid in cash or transferred to another depositary institution with their consent. In the event that the Corporation does not receive any response from such holders of Inactive Accounts within sixty (60) days from the Effective Date, such Inactive Accounts shall be transferred to the OCFI.



(D)   Assets of clients of the Corporation held in trust accounts or in custody accounts shall be transferred as per instructions of said clients. Securities held is such accounts shall be transferred to securities accounts designated by such clients, or in the event the client so orders that the securities be sold, such securities will be sold, and the proceeds of such transactions shall be delivered to the client. In the event that securities held by clients in

trust accounts or custody accounts at the Corporation are Venezuelan securities or securities subject to sanctions, such transfer of the account or sale of the securities shall be made in accordance with applicable law and regulations and shall be coordinated with the OCFI and federal authorities.

(E)     As soon as is reasonable and practicable after the Effective Date, the Corporation shall transfer and assign all of its remaining assets after the sale of the Corporation's investments and work of arts referred to in subsection (B) above, subject to payment and/or transfer of the Corporation's liabilities as provided in Section 5 and Section 6(B) of this Plan, to the extent of the value of said assets to the Shareholder, in complete liquidation, cancellation and redemption of all of the outstanding capital stock of the Corporation in accordance with the requirements of Act 52 and the regulations promulgated thereunder. Said transfers and assignment shall be commenced on the Effective Date, shall be completed as soon as possible thereafter, and shall be evidenced by such public or private instruments as the Corporation deems necessary in order to perfect and, in the case of real property, to record its title to such assets in the Shareholder. Any such cancellation of the Corporation's capital stock shall be approved by the OCFI as required under the Act 52.

(F)     The Corporation shall cause the Shareholder to endorse for cancellation and deliver to the Corporation the shares of the Corporation owned by it represented by its certificates, which shall be redeemed and canceled by the Corporation in accordance with the requirements of Act 52 and the regulations promulgated thereunder.

7.     Look Back Review. Pursuant to the terms of the MOU, the Corporation commenced a review of customers' accounts in accordance with the requirements of the BSA Rules for the period covering October 1, 2016, through December 17, 2020 (the "Look Back Review") as set forth in the attached **Exhibit C.** Such Look Back Review shall continue pursuant to the Plan and shall be subject to the terms of this Section 7 of the Plan and the attached **Exhibit C.** Other than the Look Back Review and the recitals and fact descriptions in the MOU, all other provisions of the MOU shall be terminated, substituted and superseded by the Plan on the Effective Date, considering the Corporation's decision to enter into the instant liquidation and dissolution process *and further provided* that the Corporation complies with its obligations under this Plan and the representations made herein.

8.     Taxes. On or after the Effective Date the Corporation shall file a request for an administrative determination or ruling with the Department of the Treasury of Puerto Rico confirming that the liquidation of the Corporation is not subject to Puerto Rico taxation pursuant to the Act and the Code in order to provide such determination to the OCFI and the Department of State to cancel the registration of the Corporation in the Registry of Corporations of the Department of State.



9.     Indemnification. The Corporation and the Shareholder, joint and severally, shall continue to indemnify its officers, directors, employees, agents and the Administrator in accordance with its certificate of incorporation, bylaws, and contractual arrangements as therein or elsewhere provided, the Corporation's existing directors' and officers' liability insurance policy and applicable law, and such indemnification shall apply to acts or omissions of such persons in

connection with the implementation of this Plan and the winding up of the affairs of the Corporation. The Board is authorized to obtain and maintain insurance as may be necessary to cover the Corporation's indemnification obligations.

10.    Surrender of License. Within ten (10) Business Days after all deposits of the Corporation are either paid to their  respective depositors or transferred to a depository institution as provided in Section 5 and Section 6(B) of this Plan and as result there are no deposits outstanding, the Corporation shall notify of such facts to the  OCFI and surrender its license as an international banking entity under the Act 52. Upon receipt and  confirmation of the surrender of the license to the OCFI, the Corporation shall no longer be prospectively subject  to the Act; provided however, that regardless of the surrendering of the license, the Corporation shall be obligated to the full extent to fulfill its obligations pursuant to this Plan and the Look Back Review.

11.    Third Party Administrator. During the Liquidation Period, the Administrator, on behalf of the Corporation, shall  have authority to sell, transfer and/or liquidate the Corporation's assets pursuant to the terms of this  Plan at such times and in such manner as the Administrator deems advisable. The Corporation shall  bear all expenses incurred by it in connection with the carrying out of this Plan including, but not  limited to the expenses of the Administrator, all printing, audit, legal, accounting, custodian, and  transfer agency fees, and the expenses of any reports. The Corporation estimates that the expenses   to be incurred by it during the Liquidation Period, assuming a Liquidation Period of six (6)   months, to be approximately $7,904,000.00 or $1,317,333.33 monthly, taking into consideration expenses associated to the Look Back Review, among other expenses. There is no assurance  that actual expenses incurred by the Corporation will not be higher than this estimated amount.

12.    Board Constitution and Officers. (A) As of the Effective Date, the Shareholder shall appoint as directors of the Corporation, Gregorio D'Andrea, Juan Carlos Eyherabide and Ramón Ponte, and such directors shall appoint Gregorio D'Andrea as President and Chief Executive  Officer, Ana Faría as Secretary and Chief Legal Counsel, Denisse Aracena as Vice President and   Chief Compliance Officer, and Jennifer López as Chief Financial Officer and Treasurer.

13.    Employees and Independent Contractors. In connection with effecting the liquidation and dissolution of the Corporation and for the purpose of implementing and assuring completion of the Plan, the Administrator shall cause the Corporation to hire or retain  such employees, consultants, independent contractors, agents and advisors as the Board deems necessary or desirable to supervise or facilitate the dissolution and liquidation of the Corporation in accordance with the terms of this Plan. The Corporation has established compensation packages to personnel essential to the implementation of the Plan, however, the Corporation may, in the absolute discretion of the Board, but subject to applicable legal and regulatory requirements, pay the Corporation's officers, employees, consultants, independent contractors, agents, advisors and representatives, or any of them, compensation or additional compensation above their regular compensation, in money or other property, as severance, bonus, or in any other form, in recognition of the efforts they, or any of them, will be required to undertake, or actually undertake, in connection with the implementation of the Plan. The compensation of the directors shall be the same compensation set as of the Effective Date and that compensation shall not be modified without the no-objection of the OCFI. The Corporation shall submit within five (5) Business Days

of the execution of this Plan a list of employees, consultants, independent contractors, agents and advisors that will aid in the liquidation of the Corporation for OCFI's knowledge and determination of no objection. If the Corporation does not receive the response from OCFI within five (5) Business Days from notifying the OCFI of such information, the OCFI's no objection shall be deemed as issued. The Corporation shall continue to use consultants, independent contractors, agents and advisors that will aid in the liquidation of the Corporation until and if the OCFI issues an affirmative objection to their continued use by the Corporation.

14.     Notice of Liquidation. As soon as practicable after the Effective Date and to the extent such notice is required under the PRGCL, the Corporation shall mail notice to its known Creditors, at their addresses as shown on the Corporation's records, that this Plan has been approved by the Board, the Shareholder and the OCFI and that the Corporation will be liquidating its assets.

15.     Termination of the Corporation and Corporate Dissolution. (A) The Corporation shall be terminated as reasonably practicable after the Effective Date and the completion of the implementation of the Plan and at that time, a termination date shall be determined by the Board of the Corporation (the "Termination Date").

(B) Pursuant to the PRGCL and after the final Liquidation Distribution, the Corporation shall prepare and file the Certificate of Dissolution, including reference to the Termination Date, with and for acceptance by the Department of State.

16.     Other Filings. As soon as practicable after the final distribution of the Corporation's assets to the Shareholders, the Corporation shall file notice of liquidation and dissolution of the Corporation and any other documents as are necessary to effect the liquidation and dissolution of the Corporation in accordance with the requirements of any applicable securities laws, and any rules and regulations of the Commissioner or any other state agency, including, without limitation, the surrendering of the license under the Act to the Commissioner or withdrawing any qualification to conduct business in any jurisdiction in which the Corporation is so qualified, as well as the preparation and filing of any tax returns, including, but not limited to the Corporation's final income tax returns.

17.     Further Assurances. The Board shall take such further action, prior to, at, and after the final Liquidation Distribution, as may be necessary or desirable and proper based on the advice of the Administrator to consummate the transactions contemplated by this Plan.

18.     Governing Law. This Plan shall be governed and construed in accordance with the laws of the Commonwealth of Puerto Rico.

19.     Severability. Any provision of this Plan that is declared invalid or unenforceable by a court of competent jurisdiction shall be ineffective to the extent of such invalidity or unenforceability without invalidating or rendering unenforceable the remaining provisions hereof. The headings or titles of the sections of this Plan are used for purposes of reference and they should not affect the construction, interpretation, validity and/or enforceability of this Plan.

[SIGNATURE PAGE IN NEXT PAGE]

**IN WITNESS WHEREOF,** the Corporation and the Shareholder hereto have caused this Plan to be approved and executed by their duly authorized officers as August 8, 2022.

**BANCREDITO INTERNATIONAL BANK & TRUST CORPORATION**
**The "Corporation"**

By: _____

Name: Gregorio D'Andrea
Title:   President and Chief Executive Office

**BANCREDITO HOLDING CORPORATION**
**The "Shareholder"**

By: _____

Name: Julio M. Herrera Velutini
Title:   Chairman

Accepted by:

**THE OFFICE OF THE COMMISSIONER OF FINANCIAL INSTITUTIONS**

By: _____

Name: Natalia I. Zequeira Díaz, Esq.
Title:   Commissioner

Dated: Aug. 9, 2022

**EXHIBIT A**

<u>**Memorandum of Understanding**</u>
<u>**Dated December 21, 2022**</u>



## EXHIBIT B

### Related Parties

BRITANNIA BANK & TRUST LTD *,**
BRITANNIA GLOBAL INVESTMENTS LIMITED *,**
BRITANNIA GLOBAL MARKETS LIMITED *,**
CHATELROUX CORPORATION
BANCREDITO HOLDING CORPORATION
JULIO MARTIN HERRERA VELUTINI
MELANIE ODETTE NENNIG RUHS
ISABELA HERRERA BELLO
JULIO CESAR HERRERA BELLO
GILDA RODRIGUEZ
CARLOS ALBERTO HERRERA
JOSE FRANCISCO HERRERA
MARIA FERNANDA BELLO PACHECO



---

* Only for funds for their own account and not funds of clients of such Britannia entities.
** These Britannia entities are affiliates of Britannia Financial Group Limited, that is owned by a UK Trust in which Julio Cesar Herrera Bello, Isabela Herrera Bello and Melanie Odette Nennig Ruhs are the ultimate beneficial owners (UBOs)

## EXHIBIT C

### Look Back Review

(A)     The Look Back Review shall continue pursuant to the Plan and shall be subject to the terms of this **Exhibit C** and shall include:

(i)     a review of all customer (individuals and entities) accounts and transactions in excess of $2,500 and provide a written report on the Corporation's suspicious activity monitoring ("SAR Look-Back") in order to determine whether suspicious activity was timely identified by the Corporation, and if appropriate to do so, was timely reported by the Corporation in accordance with 12 C.F.R. § 21.11 and 31 C.F.R. § 1010.306; and

(ii)     a review of all accounts and transactions from foreign correspondent accounts ("Correspondent Accounts Look-Back") in excess of $2,500 in order to determine whether suspicious activity was timely identified by the Corporation, and if appropriate to do so, was timely reported by the Corporation in accordance with 12 C.F.R. § 21.11 and 31 C.F.R. § 1010.306.



The Look Back Review shall have the scope proposed by the Corporation to OCFI on April 8, 2022 and agreed and approved by the OCFI on May 10, 2022.   For the avoidance of doubt, transactions reviewed by OCFI examiners as part of the examination resulting in the OCFI's Report of Examination of the Corporation for the period starting on October 1, 2016 through March 31, 2019 and that were not ultimately included in the list of transactions that OCFI already requested the Corporation to file a SAR, should not be excluded from the universe of transactions to be considered for review by the Consultant, as defined herein below, consistent with subsections (i) and (ii) above. Moreover, all system-generated alerts which the Corporation determined it would not file a SAR shall be included as part of the universe of transactions to be considered for review by the Consultant as part of the Look Back Review scope and methodology.

(B)     Kaufman-Rossin & Co. shall perform the Look Back Review, including the SAR Look-Back and the Correspondent Accounts Look-Back (the "Consultant") as previously submitted to, and approved by, the OCFI.  The Consultant shall be available for periodic meetings with OCFI, if requested.

(C)     The purpose of the SAR Look-Back and the Correspondent Accounts Look-Back is to determine whether additional SARs should be filed by the Corporation's BSA Officer and informed to the Administrator for any previously unreported suspicious activity; to review the quality and accuracy of previous SAR filings to determine whether corrections or amendments are necessary to ensure that the suspicious activity identified was accurately reported in accordance with the BSA, particularly to determine whether (i) the SAR narrative clearly identifies the *who, what, where, when* and *why* the activity is considered suspicious; (ii) the method of operation (or how?) was included in the narrative; and (iii) that the narrative does not equate to a "defensive SAR" filing either to prevent criticism from regulators or as a response to an ongoing or completed examination; and to identify any accounts whose BSA/AML risk rating should be reevaluated including without limitation, any account owned by shareholders, officers, employees, directors of the Corporation or any of its affiliates.

(D)      The scope of the SAR Look-Back and the Correspondent Accounts Look-Back shall also include, in addition to the transactions identified in Paragraph (A) above, coverage of all of the Corporation's customer and account activity for the period covering October 1, 2016, through December 17, 2020, for accounts:

      (i)      Owned by officers, employees, or directors of the Corporation or any of its affiliates (as the term "affiliate" is defined in 12 U.S.C. § 371c(b)(1)), or a family member of any such person;

      (ii)     For which the Corporation received a law enforcement subpoena or a demand request.

(E)      By November 7, 2022, the Consultant shall provide the BSA Officer with a written report that contains a list of any SARs that should be filed or existing SARs that should be modified to meet the requirements of 31 C.F.R. § 1020.320, a list of accounts that represent excessive risk for BSA/AML compliance, and a conclusion about the effectiveness of the Corporation's suspicious activity monitoring. The SAR Look-Back report and the Correspondent Accounts Look-Back report should also, among other things, describe the methodologies and tools used in conducting the reviews, describe the process followed for investigating customers and customer activities, and provide a summary of the number and types of customers and accounts reviewed, number of customers and accounts requiring additional investigation, number of customers warranting SAR filings or modifications to existing SAR filings, and the number of customers where it was determined not to file SARs. The Administrator shall immediately provide a copy of the final written report of the findings and recommendations from the SAR Look-Back to the OCFI. The  supporting materials and work papers associated with the SAR Look-Back and the Correspondent Accounts Look-Back shall be made available to the OCFI upon request subject to applicable privileges and confidentiality requirements protecting the information of the Corporation's customers in such materials.

(G)      Within thirty (30) days after completion of the Look Back Review, the BSA Officer shall prepare and file any additional SARs that are necessary based upon the review.

(H)      Based upon the results of the SAR Look-Back and the Correspondent Accounts Look-Back, the OCFI may require an expanded review of the Corporation's accounts and/or alerts.